February 10, 2022

**BY ECF**
The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

# HAUSFELD.

33 Whitehall Street
14th Floor
New York, NY 10004

**SCOTT A. MARTIN**
**PARTNER**

E  smartin@hausfeld.com
T  +1 646 357 1100
DD  +1 646 357 1195

**Re:**   *PHHHOTO Inc. v. Meta Platforms, Inc., et al.*, No. 1:21-cv-06159-KAM-RLM

Dear Judge Matsumoto:

On behalf of Plaintiff PHHHOTO Inc. ("Phhhoto"), we respond to the request of Defendant Meta Platforms, Inc. ("Meta") for a pre-motion conference and proposing a motion to dismiss Phhhoto's Complaint. In its request, Meta misrepresents Phhhoto's claims, attacks strawman claims, ignores key allegations, cites cases inapposite to the pleaded facts, and fails to cite key cases on point.

Among other misstatements, Meta's letter claims that "Phhhoto's state law claims are governed by a three-year statute of limitations," Meta Ltr. at 1, ECF No. 16 ("Ltr."), but Phhhoto's principal state law claim is based upon fraud, which carries a six-year statute of limitations. Meta's letter claims that Phhhoto fails to plead fraudulent concealment, *id*. at 2, but that is clearly pleaded in the Complaint. Compl. ¶¶ 140-42, ECF No. 1. Meta's letter claims that Phhhoto failed to plead a continuing violation, Ltr. at 2, but that is specifically pleaded in the Complaint, based on unlawful acts within the limitations period, Compl. ¶¶ 143-44. Meta's letter claims that Phhhoto "has not plausibly alleged facts establishing objectively misleading conduct directed at consumers," Ltr. at 3, but Phhhoto's Complaint does so. Compl. ¶¶ 68-72 (false Instagram representation). And Meta's letter asserts that "claims based on some of the same alleged conduct were dismissed as untimely," Ltr. at 1, but the acts alleged in Phhhoto's Complaint, except one, are distinct from those cases.

Phhhoto's Complaint alleges a course of anticompetitive and fraudulent conduct from the highest levels of Meta (then called Facebook), which drove from the market a nascent, high-growth company with novel, acclaimed technology. Meta's conduct constituted monopolization (monopoly maintenance) under Section 2 of the Sherman Act, 15 U.S.C. § 2, as well as fraud and unfair competition.

The elements of monopolization are (1) monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power, generally, through anticompetitive conduct. *Verizon Comm'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). Monopoly power for Section 2 cases has been defined consistently by the Supreme Court as "the power to control prices or exclude competition" since *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). Monopoly power can be proven by direct evidence, or indirectly, by defining a market, showing that the firm has a dominant share of that market, and then examining entry barriers and other structural characteristics of the market. *See United States v. Grinnell Corp.*, 384 U.S. 563, 571, 576 (1966). Phhhoto pleads both methods of proof in its Complaint: direct evidence of market exclusion, Compl. ¶¶ 112-13, and indirect proof, *id*. ¶¶ 106-11, 114-25.

The conduct at issue—the "willful maintenance"—must have the potential to harm competition. Such "antitrust injury" is shown "when a competitor is forced out of the market." *See Viamedia, Inc. v.*



*Comcast Corp.*, 951 F.3d 429, 481-82 (7th Cir. 2020). Actions by a monopolist that impair "rivals' opportunity to compete in a way that is inconsistent with 'competition on the merits'" meet the conduct element of a Section 2 case. *Id.* at 452-53. Phhhoto's Complaint pleads just such acts.

**Refusals to Deal.** Meta refused to deal with Phhhoto through the withdrawal by Meta's Instagram platform of various aspects of Phhhoto's ability to interoperate with Instagram. *See* Compl. ¶¶ 51-54 (APIs); 55-61 (iPhone Hooks capabilities). In ruling for the plaintiff (represented by Meta's counsel here), the Seventh Circuit in *Viamedia* explained that antitrust disputes over refusals to deal are generally resolved by reference to the factors cited in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), with no single factor being dispositive. *See Viamedia*, 951 F.3d at 454-57. Phhhoto pleads the relevant factors, including an abrupt reversal of a pre-existing, mutually advantageous relationship. *See* Compl. ¶¶ 26-31, 42, 51-57, 67. At bottom, Phhhoto's claims will show that the "refusal to deal was part of a larger anticompetitive enterprise, such as (again) seeking to drive a rival from the market . . . ." *Viamedia*, 951 F.3d at 462 (citing *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013) (Gorsuch, J.)); *see* Compl. ¶ 95.

**Boomerang.** *Trinko* teaches that the ultimate issue in an exclusionary conduct case is "motivation" —whether the monopolist's conduct was "prompted not by competitive zeal but by anticompetitive malice." 540 U.S. at 409; *see also Viamedia*, 951 F.3d at 462-63. A complaint filed by the State of New York refers to an internal Facebook document that appears (from the redacted public filing) to reveal the anticompetitive motivation for Facebook's actions concerning Phhhoto, including the release of the Boomerang product. *See* Compl. ¶ 226, *New York v. Facebook, Inc*., No. 20-cv-03589 (D.D.C. Dec. 9, 2020), ECF No. 4 (dismissed on other grounds, appeal pending).

**Change in Position of Posts in Feeds.** Phhhoto's Complaint alleges that Meta penalized and suppressed user posts that contained Phhhoto content, diminishing user engagement with Phhhoto. Meta misrepresented and actively concealed the exclusionary nature of the change. *See* Compl. ¶¶ 67-75.

Meta proposes to move to dismiss on three grounds, none of which is supported by the case law.

**Phhhoto's Claims Are Timely.** Meta claims that Phhhoto's complaint is time-barred. Not so. The limitations period starts when the plaintiff discovered or should have discovered its injury by the conduct—and for a continuing antitrust violation, by the last overt act that injures the plaintiff. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). Moreover, fraudulent concealment tolls the statute of limitations, whether by an affirmative act or by inherently self-concealing nature. *New York v. Hendrickson Bros. Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988). Phhhoto's Complaint pleads in detail what its founders knew at the time of the algorithm change, what they did in response, how Meta affirmatively deceived them and consumers, and when they began to suspect the truth. Compl. ¶¶ 76, 95. Phhhoto had no access to the black-box algorithm, and the nature of Meta's conduct was actively misrepresented. Indeed, Meta continues to this day to deny algorithmic manipulation, notwithstanding recent credible press reports of just such activity. *Id*. ¶ 82.

**Phhhoto Plainly States a Claim for Monopolization.** Phhhoto's market definition mirrors that in the FTC's amended complaint against Meta, and the market power allegations are largely identical as well (and supplemented here by direct proof allegations). *Compare* First Am. Compl., ¶¶ 196-203, *F.T.C. v. Facebook, Inc.,* No. 20-3590-JEB (D.D.C. Jan. 11, 2022), ECF No. 82, *with* Compl. ¶¶ 106-11. That court rejected Meta's arguments on market definition as "fruitless," *F.T.C. v. Facebook*, No. 20-3590 (JEB), 2021 WL 2643627, at *11 (D.D.C. June 28, 2021), and just last month allowed the case to



proceed, in a ruling conspicuously absent from Meta's letter, *F.T.C. v. Facebook*, No. 20-3590 (JEB), 2022 WL 103308 (D.D.C. Jan. 11, 2022) (*Facebook II*). Meta now proposes a motion as to whether such claims are even "plausible." Ltr. at 2.

Meta's assertion that Phhhoto should really be litigating about "some other undefined market between Meta and app developers," *id.*, fares no better. Contrary to Meta's letter, Phhhoto's Complaint pleads Meta's withdrawal of "critical infrastructure." *Compare* Ltr. at 2, *with* Compl. ¶ 127. The FTC's amended complaint also pleads exclusionary conduct toward app developers, and neither the court nor Meta suggested that the FTC would have to plead a new market to sustain those claims. *Facebook II*, 2022 WL 103308, at *5. The relevant market in both cases— "personal social networking services" — covers Meta's exclusionary conduct here because Phhhoto could not—and did not—acquire appreciable users by interoperating with apps outside that market.

Meta also claims that Phhhoto must allege "that Meta interfered with rivals' independent dealings with users." Ltr. at 2. No such requirement exists for monopolization. Indeed, the Supreme Court has condemned a monopolist conditioning platform access to stop users from dealing with a nascent rival. *See Lorain Journal Co. v. United States*, 342 U.S. 143, 152 (1951). Meta's letter further claims that Phhhoto's Complaint fails sufficiently to allege "anticompetitive conduct." Ltr. at 3. The pleaded exclusionary conduct—and *Lorain Journal* and *Viamedia*—say otherwise. Furthermore, the Supreme Court and the circuit courts have repeatedly rejected the notion that "the right to refuse to deal with other firms … is unqualified." *See Viamedia*, 951 F.3d at 456. And contrary to Meta's assertion, *Viamedia* specifically rejected that a plaintiff must plead "profit sacrifice." *Id.* at 462.

**Phhhoto's State Law Claims Are Properly Pleaded.** As noted, Phhhoto's fraud-based claims carry a six-year statute of limitations. *See Express Gold Cash, Inc.* v. *Beyond 79, LLC,* No. 1:18-cv-00837 EAW 2019 WL 4394567, at *4 (W.D.N.Y. Sept. 13, 2019). Meta's bare assertion of the absence of a "factually false statement," Ltr. at 3, ignores allegations concerning the organization of users' newsfeeds, Compl. ¶¶ 68-72, and pre-population of #phhhoto, *id.* ¶ 142. Meta's assertion that Phhhoto's unfair competition claim has not "identifie[d] any property belonging to Phhhoto that was allegedly misappropriated," Ltr. at 3, ignores a "broad and flexible doctrine" that goes beyond misappropriation, *see Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982). And Meta's claim that "objectively misleading conduct directed at consumers" is lacking in the Section 349 claim, Ltr. at 3, is belied by false public statements concerning newsfeeds and the consumer harm that is pleaded, Compl. ¶¶ 134-36; *see Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).

**Proposed Case Plan.** We respectfully submit that there is no good faith basis for Meta filing a dispositive motion at this time. The parties should proceed to discovery on the numerous bad acts by Meta that underlie both the antitrust and fraud claims. Meta's relitigation of market issues should be precluded if the FTC prevails. If not, Phhhoto also can prevail through direct proof of monopoly power by showing Meta's ability to exclude competition, requiring substantially less discovery and proof.

                                                   Respectfully submitted,

                                                   /s/ *Scott Martin*_____
                                                   Scott Martin

cc: Counsel of Record (by ECF)