IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

PHHHOTO INC.,

        Plaintiff,

    v.

META PLATFORMS, INC. and DOES
NOS. 1-7,

        Defendants.

Case No. 1:21-cv-06159-KAM-RLM

**META PLATFORMS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PHHHOTO INC.'S AMENDED COMPLAINT**

AARON M. PANNER (*pro hac vice*)
SILVIJA A. STRIKIS (*pro hac vice*)
JULIUS P. TARANTO (*pro hac vice*)
ALEX P. TREIGER (*pro hac vice*)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
sstrikis@kellogghansen.com
jtaranto@kellogghansen.com
atreiger@kellogghansen.com

*Counsel for Meta Platforms, Inc.*

June 6, 2022

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

I.      Phhhoto's Claims Are Untimely ................................................................................ 1

II.     Phhhoto's Antitrust Claim Fails on the Merits .......................................................... 5

III.    Phhhoto Fails To State Claims Under New York Law ............................................... 9

CONCLUSION ...................................................................................................................... 10

**TABLE OF AUTHORITIES**

Page

**CASES**

*A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135 (2d Cir. 2011).............................................3

*Adderall XR Antitrust Litig.*, *In re*, 754 F.3d 128 (2d Cir. 2014) .....................................................7

*Air Cargo Shipping Servs. Antitrust Litig.*, *In re*, 2010 WL 10947344
    (E.D.N.Y. Sept. 22, 2010).............................................................................................. 3-4

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).....................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................................8

*Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69
    (2d Cir. 2015)...............................................................................................................10

*CA, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45 (E.D.N.Y. 2009)..............................................10

*Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247 (E.D.N.Y. 2016).......................................10

*CDx Lab'ys, Inc. v. Zila, Inc.*, 162 A.D.3d 970, 79 N.Y.S.3d 285
    (2d Dep't 2018)..............................................................................................................4

*Ciprofloxacin Hydrochloride Antitrust Litig.*, *In re*, 261 F. Supp. 2d 188
    (E.D.N.Y. 2003).........................................................................................................2, 3

*City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373 (9th Cir. 1992) .........................................6

*Com. Data Servers, Inc. v. IBM Corp.*, 166 F. Supp. 2d 891 (S.D.N.Y. 2001)............................10

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ......................................6

*Corcoran v. N.Y. Power Auth.*, 202 F.3d 530 (2d Cir. 1999) ........................................................5

*Duckett v. Williams*, 86 F. Supp. 3d 268 (S.D.N.Y. 2015) ...........................................................9

*Eatoni Ergonomics, Inc. v. Research In Motion Corp.*, 826 F. Supp. 2d 705
    (S.D.N.Y. 2011), *aff'd*, 486 F. App'x 186 (2d Cir. 2012) ..........................................6

*Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612 (S.D.N.Y. 2014) ............................................10

*Gabapentin Patent Litig.*, *In re*, 649 F. Supp. 2d 340 (D.N.J. 2009)............................................6

*GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170 (4th Cir. 2007).........................................2

*Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393 (S.D.N.Y. 2020) .................................................9

*LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) ......................................................6

*Lorain Journal Co. v. United States*, 342 U.S. 143 (1951)............................................7

*Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F. Supp. 3d 122
    (S.D.N.Y. 2016) ....................................................................................................3

*Midwest Mem'l Grp., LLC v. Int'l Fund Servs. (Ireland) Ltd.*,
    2011 WL 4916407 (S.D.N.Y. Oct. 17, 2011) ....................................................5

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243
    (2d Cir. 2018)......................................................................................................10

*Nat'l Football League's Sunday Ticket Antitrust Litig.*, *In re*, 933 F.3d 1136
    (9th Cir. 2019)......................................................................................................6

*Natsource LLC v. GFI Grp., Inc.*, 332 F. Supp. 2d 626 (S.D.N.Y. 2004) .....................8

*New York v. Facebook, Inc.*, 549 F. Supp. 3d 6 (D.D.C. 2021),
    *appeal docketed*, No. 21-7078 (D.C. Cir. July 29, 2021) ...........................5, 6, 7

*Nine West Shoes Antitrust Litig.*, *In re*, 80 F. Supp. 2d 181 (S.D.N.Y. 2000)................3

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009) ..........................1, 5

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ..........................................................9

*Samanich v. Facebook*, 2021 WL 2856634 (E.D.N.Y. July 8, 2021)..............................4

*SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98 (4th Cir. 2018)........................2

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ...................................7

*US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019) ........................4

*Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020).....................................7

**STATUTES AND RULES**

Sherman Antitrust Act, 15 U.S.C. §§ 1-38:

    § 1...........................................................................................................................4

    § 2..................................................................................................................1, 4, 5, 6, 7

Fed. R. Civ. P. 9(b) .........................................................................................................9

Phhhoto's antitrust claim is time-barred because all of the challenged conduct occurred more than four years before Phhhoto sued. Phhhoto cannot claim fraudulent concealment because it alleges it had notice of its claim by April 2016. Nor has Phhhoto pleaded a continuing violation because it alleges no overt act after April 2016, and it could not have suffered an antitrust injury after it ceased operations. Phhhoto's state-law claims expired by April 2020. Numerous courts have dismissed similarly stale claims based on many of the same allegations. Phhhoto provides no reason why its case is different.

Phhhoto's claims also fail on the merits. All the specific conduct Phhhoto alleges is either categorically lawful (e.g., Meta's alleged refusals to assist Phhhoto in promoting its app) or not plausibly anticompetitive (e.g., Meta's launch of a competing service). And a plaintiff cannot bring a Section 2 claim by aggregating lawful conduct: "Two wrong claims do not make one that is right." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009). Phhhoto has also failed to plausibly allege monopoly power in a properly defined market because its assertion that Instagram was "critical infrastructure" to "personal social networking" rivals is unsupported by any properly alleged facts. Phhhoto's defenses of its state-law claims similarly contradict precedent and its own factual allegations. Because Phhhoto has amended but failed to cure the deficiencies identified in its previous pleading, this Court should dismiss with prejudice.

## ARGUMENT

## I.     Phhhoto's Claims Are Untimely

A.     Phhhoto cannot dispute that its antitrust claim accrued well outside the Sherman Act's four-year limitations period. Its arguments that it has nevertheless pleaded a timely Section 2 claim find no support in the law or the allegations of the complaint.

1.      Phhhoto's attempt to plead fraudulent concealment fails, first, because it had

notice of its claim by April 2016 or soon after.  *See* Meta MTD at 9-10.  Phhhoto maintains (at

19) that it "was not aware of Meta's content suppression and did not know of any injury" until

October 2017.  But Phhhoto admits (at 18) that it "saw [a] drop in metrics" on Instagram (but not

elsewhere) in April 2016, which "should [have] excite[d] [Phhhoto's] suspicion" and "is the

same as actual knowledge of [its] entire claim," *In re Ciprofloxacin Hydrochloride Antitrust

Litig.*, 261 F. Supp. 2d 188, 225 (E.D.N.Y. 2003) (citation omitted).  Its attempt (at 19-20) to

distinguish *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170 (4th Cir. 2007), fails because,

like those plaintiffs, Phhhoto admits it was suspicious at the time.  Am. Compl. ¶ 108 (Phhhoto

saw its growth "plummet"); *id.* ¶ 110 (Phhhoto "noticed" a "strange trend").  Furthermore,

Phhhoto admits (at 22) that all it took to put it on notice in October 2017 was to compare users'

reactions to two posts from one person on a single day.  Phhhoto cannot explain how the alleged

impact of Instagram's algorithm on phhhotos could have been missed in 2016 – and it was *not*

missed.[1]

Acknowledging that it must allege diligence, Phhhoto nonetheless argues (at 21-22) that

it could not pursue its claim before 2017 because it lacked "insight into how the Instagram

ranking algorithm worked."  But notice "does not require awareness of sufficient facts to allow a

plaintiff to litigate its case to a jury without discovery."  *SD3 II LLC v. Black & Decker (U.S.)

Inc.*, 888 F.3d 98, 112 (4th Cir. 2018).  In any event, there are no allegations that Phhhoto took

*any* steps to investigate the effect of Instagram's new algorithm – even though (1) Phhhoto

admits (¶ 91) it noticed its view counts suddenly dropped when Instagram publicly switched to

---

[1] The various news events that Phhhoto says (at 19-20) harmed Meta's reputation are
uniformly irrelevant to whether Instagram's algorithm suppressed competitor content and
occurred well after Phhhoto says it had notice but years before it filed suit.

an algorithmic feed and "ruled . . . out" other explanations for the decline (¶ 93); (2) all of the

other conduct that Phhhoto now claims was anticompetitive (like API withdrawals and the

launch of Boomerang) had by then occurred (¶¶ 65, 71, 77); and (3) Phhhoto claims (at 15) that

Instagram was "critical" infrastructure that Phhhoto's business "could not succeed" without.

Phhhoto's failure to investigate or bring its antitrust claim – which it argues (at 7-13) it could

bring with or without its allegations regarding the algorithmic feed – "depicts complacency, not

diligence." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011).[2]

      **2.**      Phhhoto has not pleaded a continuing violation of the antitrust laws because it

alleges no new overt act that injured Phhhoto within the limitations period. *See* Meta MTD at

13-14. Phhhoto is wrong (at 24) that it continued to suffer antitrust injuries after it closed in June

2017. That argument relies on allegations found nowhere in the complaint. And even crediting

the idea that Phhhoto nominally "remained in existence" after June 2017, once Phhhoto "shut

down operations," Am. Compl. ¶ 104, it was no longer seeking to compete with Meta for users.

Consequently, any subsequent suppression of phhhotos could not have harmed *competition*, and

thus is not an *antitrust* injury that could restart the limitations period. *See* Meta MTD at 14.

      Phhhoto argues (at 17, 23-24) that each suppressed phhhoto restarts the limitations clock,

but the challenged "act" was Instagram's April 2016 implementation of the algorithmic feed.

Any supposed continuing effects of the algorithm were "abatable but unabatable inertial

consequences." *Ciprofloxacin Hydrochloride*, 261 F. Supp. 2d at 229 (citation omitted).

Phhhoto's reliance (at 23) on *In re Air Cargo Shipping Services Antitrust Litigation*, 2010 WL

---

[2] *Merced Irrigation District v. Barclays Bank PLC*, 165 F. Supp. 3d 122, 136 (S.D.N.Y. 2016), and *In re Nine West Shoes Antitrust Litigation*, 80 F. Supp. 2d 181, 192 (S.D.N.Y. 2000), are inapposite because both involved "inherently self-concealing" price-fixing conspiracies, and because the plaintiffs promptly ("within days," 80 F. Supp. 2d at 193) investigated and filed suit after receiving notice of potential price manipulation.

10947344 (E.D.N.Y. Sept. 22, 2010), a Section 1 case involving new sales at supracompetitive prices, is misplaced, because maintaining a previously enacted unilateral policy is not a "new and independent act," *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019). While Phhhoto argues (at 24) that Meta's adoption of the algorithm was not "final" because Meta "continued to modify" it, nothing in the complaint supports that assertion.[3]

**B.** Phhhoto's unfair competition claim is subject to a three-year statute of limitations and expired in April 2019. *See* Meta MTD at 15-16. Phhhoto argues (at 28) that a six-year period applies because the "crux" of its claim "is that Meta obtained Phhhoto's data and technical insights through fraudulent statements." But that assertion finds no support in the complaint and, regardless, makes clear that Phhhoto's claim alleges misappropriation of property – "data and technical insights." "[T]he statute of limitations under New York law for an unfair competition claim based on misappropriation of another's labors or expenditures is three years." *Samanich v. Facebook*, 2021 WL 2856634, at *6 (E.D.N.Y. July 8, 2021) (Matsumoto, J.). The manner in which the alleged misappropriation occurred, through fraud or otherwise, is immaterial. *See id.* (three-year limitations period governed claim that Internet companies stole plaintiff's ideas); *CDx Lab'ys, Inc. v. Zila, Inc.*, 162 A.D.3d 970, 971, 79 N.Y.S.3d 285, 286 (2d Dep't 2018) (three-year limitations period governed claim that defendant used confidential list to poach customers).

**C.** Because Phhhoto's fraud claim is incidental to its Section 2 claim, the Sherman Act's four-year statute of limitations controls, and the claim expired in April 2020. *See* Meta MTD at 16-17. Phhhoto insists (at 27) that its fraud claim has "meaning and force independent

---

[3] Phhhoto's invocation (at 24 n.12) of government tolling is unavailing because its antitrust claim expired in April 2020, before the FTC filed its suit.

of" its antitrust claim. That argument ignores *Corcoran v. New York Power Authority*, 202 F.3d 530 (2d Cir. 1999), which establishes that a fraud claim is incidental unless "the fraud occurred separately from . . . the alternate claim" and "the injuries caused by the fraud are distinct from the injuries caused by the alternate claim." *Id.* at 545. Phhhoto's fraud claim rests on the same alleged conduct and injuries as its Section 2 claim. *See* Meta MTD at 16. *Midwest Memorial Group, LLC v. International Fund Services (Ireland) Ltd.*, 2011 WL 4916407 (S.D.N.Y. Oct. 17, 2011), does not help Phhhoto. The court there found the plaintiff's fraud claims *were* incidental to its conversion claim because they "center[ed] on allegations of theft rather than deception," and the plaintiff did "not allege that it suffered damages distinct from the conversions." *Id.* at *5. The same analysis applies here.

## II.      Phhhoto's Antitrust Claim Fails on the Merits

A.      Phhhoto asserts (at 5-6) that it has alleged a "course of conduct" not subject to refusal-to-deal law. Courts have squarely rejected this argument with regard to the same conduct, including in *New York v. Facebook*, *Inc.*, where the district court addressed nearly identical allegations regarding Phhhoto. *See* 549 F. Supp. 3d 6, 28, 47-48 (D.D.C. 2021) (rejecting states' "course of conduct" argument and holding that, "to be actionable, an unlawful refusal-to-deal scheme would have to be made up of refusals that were themselves independent violations of the *Aspen Skiing* test"). If a plaintiff's choice to label its claim as a "course of conduct" could circumvent refusal-to-deal doctrine, "monopolists might face liability for refusals to deal that are categorically protected from scrutiny" for sound reasons of antitrust policy. *Id.* at 28. Phhhoto's approach also contradicts the Supreme Court's separate analysis of the claims in *linkLine*, which rejected Section 2 plaintiffs' similar attempts to "alchemize . . . a new form of antitrust liability" by "join[ing] [one] claim that cannot succeed with" another. 555 U.S. at 457.

5

Phhhoto's authorities (at 6) are inapposite. *Continental Ore Co. v. Union Carbide &*
*Carbon Corp.*, 370 U.S. 690, 697-98 (1962), involved the aggregation of multiple firms' market
shares to determine the market-wide impact of a conspiracy. *In re National Football League's*
*Sunday Ticket Antitrust Litigation*, 933 F.3d 1136, 1152-53 (9th Cir. 2019), involved the
competitive impact of "interlocking agreements." Neither case "stand[s] for the unworkable
proposition that business conduct that does not offend the antitrust laws may violate the Sherman
Act once it is combined with other lawful business conduct." *Eatoni Ergonomics, Inc. v.*
*Research In Motion Corp.*, 826 F. Supp. 2d 705, 710 (S.D.N.Y. 2011) (discussing *Continental*
*Ore*), *aff'd*, 486 F. App'x 186 (2d Cir. 2012).[4]

Phhhoto likewise fails to support its claim that any of the alleged conduct violates
Section 2. Phhhoto is incorrect in asserting (at 14) that the district court in *New York* dismissed
the states' case solely on laches grounds; it also rejected the Platform-related claims on the
merits. *See* 549 F. Supp. 3d at 28, 34. Regarding the alleged API withdrawals, Phhhoto does not
attempt to substantively distinguish *New York* but instead argues (at 8-9, 14) only that this Court
should decline to follow it. Phhhoto's arguments (at 9-10, 12-13) that Meta was obliged to let
Phhhoto advertise for free – with a favorable position in users' feeds and pre-populated hashtags
on Instagram – underscore that Phhhoto does not claim that Meta interfered with Phhhoto's
independent competitive efforts, but instead complains about Meta's design of its own apps. The

---

[4] Nor does *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) (en banc), or *City of*
*Anaheim v. Southern California Edison Co.*, 955 F.2d 1373 (9th Cir. 1992), hold that
categorically lawful conduct can become the basis of liability if combined with any other
conduct. *City of Anaheim* even clarified that liability cannot follow from "perfectly legal acts."
955 F.2d at 1376; *see also LePage's*, 324 F.3d at 162 (aggregating the "anticompetitive effect"
of "exclusionary practices" already determined unlawful); *In re Gabapentin Patent Litig.*, 649
F. Supp. 2d 340, 361-68 (D.N.J. 2009) (permitting "overall scheme" liability only "in the patent
context," where the components of the alleged scheme were not categorically lawful).

allegations do not resemble the termination of a profitable joint venture explicable only as an attempt to destroy a competitor and obtain a monopoly – the basis for liability in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), and for the refusal-to-deal claim in *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020).[5]

Phhhoto's reliance (at 12-13) on *Lorain Journal* and *Microsoft* is unavailing because both were exclusive-dealing cases in which the defendant conditioned its business with third parties on their promise not to deal *independently* with the defendant's rivals. *See Lorain Journal Co. v. United States*, 342 U.S. 143, 149 (1951); *United States v. Microsoft Corp.*, 253 F.3d 34, 70-71 (D.C. Cir. 2001). In both cases, the defendant forced customers (not would-be rivals) to make a choice they would never need to make if not subject to monopoly power: continue dealing with the monopolist, or deal with rivals but sacrifice that necessary, monopolized product. By contrast, Phhhoto alleges that Facebook declined to help Phhhoto, while leaving customers free to engage in independent dealings with Phhhoto. *See New York*, 549 F. Supp. 3d at 31-34 (holding that the states' allegations, including allegations regarding Phhhoto, did not state a claim under *Lorain Journal* or *Microsoft*).

Phhhoto's argument (at 11) challenging Boomerang turns *solely* on intent, which, by itself, is never sufficient to support a Section 2 claim – especially where the alleged conduct *increases* competition. *See Microsoft*, 253 F.3d at 59; *New York*, 549 F. Supp. 3d at 26, 33; *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 135 (2d Cir. 2014) (explaining that "[e]ven an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws") (citation omitted). Phhhoto's argument (at 11-12) based on

---

[5] Phhhoto's argument (at 10) that only a monopolist would limit how customers use its service is obviously incorrect. It is common for services to impose limitations on uses that risk undermining the commercial value of the service.

"misrepresentations to consumers" fails both because Phhhoto has not adequately alleged misrepresentations, *see* Meta MTD at 27-29, and because it has not pleaded how any misrepresentations to consumers harmed *competition*.  Finally, Phhhoto's purported "predatory hiring" argument (at 13) fails because an unsuccessful attempt to hire Phhhoto engineers cannot have harmed Phhhoto or competition and because trying to hire talented employees is competition itself.  *Natsource LLC v. GFI Grp., Inc.*, 332 F. Supp. 2d 626, 632 (S.D.N.Y. 2004) ("the hiring of a competitor's employees alone generally cannot result in an antitrust violation").

**B.**      Phhhoto's antitrust claim fails for the independent reason that it has not adequately pleaded monopoly power in a relevant market.  *First*, Phhhoto has not plausibly alleged that Meta had control over an input that PSNS rivals needed to compete.  *See* Meta MTD at 23-25.  Phhhoto does not dispute that it must plead that Meta controlled such an input and that its complaint does not define any market for such an input.  Rather, Phhhoto asserts (at 15) that its conclusory allegations that Meta controlled some form of undescribed "critical" infrastructure suffice.  These bare conclusions – unsupported by any concrete factual allegations explaining the nature of the input, Meta's share of any market for that input, or why rivals lacked viable alternatives when Phhhoto itself alleges (¶ 49) that alternative distribution paths were available – fall far short of what *Twombly* requires.  *Second*, Phhhoto's defense (at 14-16) of its alleged PSNS market never explains why Phhhoto should be considered a viable PSNS competitor – something the FTC and states have never claimed – when Twitter, iMessage, YouTube, and LinkedIn should not.  Because Phhhoto must allege facts to show *both* that Phhhoto was a potential competitor *and* that other obvious alternative services were not, its claim fails.

**III.    Phhhoto Fails To State Claims Under New York Law**

A.      Phhhoto's fraud claim fails to allege a factually false statement.  Phhhoto does not

dispute that its allegations about the integration into Facebook newsfeed and policy prohibiting

pre-populated hashtags cannot support a fraud claim, instead focusing only on allegations that

Meta misled Phhhoto about the operation of its algorithm.  *Compare* Meta MTD at 27-29, *with*

Opp'n at 25.  But Phhhoto alleges nothing showing that Meta's statements – that "all the posts

will still be there, just in a different order," Am. Compl. ¶ 86 – were false.  *See Rombach v.*

*Chang*, 355 F.3d 164, 172 (2d Cir. 2004).  Phhhoto does not allege that Meta ever said how it

would treat competitor content.  Nor is it true, as Phhhoto asserts (at 25), that Meta's broad

description of its algorithmic feed gave rise to a duty to divulge every detail of its proprietary

algorithm.  "[R]evealing one fact about a subject does not trigger a duty to reveal all facts on the

subject." *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 407 (S.D.N.Y. 2020) (citation omitted).

Phhhoto's failure to plead with particularity how it detrimentally relied on Meta's

statements provides an independent basis for dismissal.  Phhhoto must allege facts showing how

Meta's statement about its algorithm induced it to "change[ ] [its] position to [its] detriment."

*Duckett v. Williams*, 86 F. Supp. 3d 268, 275 (S.D.N.Y. 2015).  Phhhoto makes no such

allegations; it alleges only that, had it known about Instagram's supposed algorithmic

suppression, "Phhhoto *could* have turned to the media, the courts, investors, or its community

with an explanation and a plea for assistance" rather than "looking for issues with [its] code."

Am. Compl. ¶ 95 (emphasis added).  This vague, equivocal allegation of what Phhhoto might

have done flunks Rule 9(b), fails to show a change in position, and makes clear that Phhhoto

suffered no harm from Meta's *statements* (as distinct from Meta's conduct).

**B.**     The Court should dismiss Phhhoto's unfair competition claim for failure to plausibly allege that Meta misappropriated any of Phhhoto's exclusive property.  Phhhoto contends (at 26) that it "need not" allege misappropriation, but that contention is foreclosed by precedent.  "Not every act, even if taken in bad faith, constitutes unfair competition." *CA, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009) (dismissing claim "due to the absence of any allegation that [defendant] misappropriated [plaintiff's] labors, skills, expenditures, good will or other property right of commercial value"); *see also Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 267 (E.D.N.Y. 2016) (Matsumoto, J.).  Unfair competition "claim[s] will fail where a plaintiff cannot demonstrate the bad faith misappropriation of a commercial advantage which belonged exclusively to him." *Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69, 70 (2d Cir. 2015) (citation omitted).

Phhhoto alleges no facts to establish that the "information" or "insight" to which it vaguely refers (at 26) belonged exclusively to Phhhoto. *See Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 630 (S.D.N.Y. 2014) (dismissing where plaintiff "fail[ed] to identify *what* innovations or developments . . . were allegedly misappropriated"); *Com. Data Servers, Inc. v. IBM Corp.*, 166 F. Supp. 2d 891, 895 (S.D.N.Y. 2001) (similar).  Phhhoto asserts (at 26) that this material was "proprietary," but the complaint makes no mention of Phhhoto's property rights.  For the same reason, Phhhoto's allegation (¶ 217) that Meta misappropriated the names of some of its engineers cannot support its claim because Phhhoto does not (and could not) allege that it had exclusive rights to its employees' names.

## CONCLUSION

The Court should dismiss Phhhoto's amended complaint with prejudice. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018).

Dated:  June 6, 2022

Respectfully submitted,

*/s/ Aaron M. Panner*
AARON M. PANNER (*pro hac vice*)
SILVIJA A. STRIKIS (*pro hac vice*)
JULIUS P. TARANTO (*pro hac vice*)
ALEX P. TREIGER (*pro hac vice*)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
apanner@kellogghansen.com
sstrikis@kellogghansen.com
jtaranto@kellogghansen.com
atreiger@kellogghansen.com

*Counsel for Meta Platforms, Inc.*

11